IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AAA COOPER TRANSPORTATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:11cv181-WHA-CSC |
| | ) (WO) |
| WES-PAK, INC., and VIMY RIDGE | ) |
| PARTNERS, LLC, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion to Dismiss filed by Vimy Ridge Partners, LLC ("VRP") (Doc. #11), and a Motion to Amend (Doc. #27) filed by Plaintiff AAA Cooper Transportation ("AAA Cooper") on May 20, 2011.

AAA Cooper filed a Complaint (Doc. #1) in this court on March 15, 2011, against Wes-Pak, Inc. ("Wes-Pak"), VRP, and Pratt Industries (USA) Inc. ("Pratt").[1] In the Complaint, AAA Cooper asserted a "Breach of Contract/Debt & Assumpsit" claim against Wes-Pak; a claim for attorney's fees against Wes-Pak; and a fraudulent transfer claim against Wes-Pak, VRP, and Pratt, pursuant to Ark. Code Ann. § 4-59-204.[2]

Subsequently, VRP filed a Motion to Dismiss (Doc. #11) pursuant to Federal Rule of Civil Procedure 12(b), arguing that (1) this court did not have personal jurisdiction over VRP;

---

[1] Pratt has been dismissed from this case, without prejudice, on motion of the Plaintiff. Doc. #36.

[2] AAA Cooper did not denominate each of its claims as "Counts."

(2) venue in this court was improper; and (3) the Complaint failed to state a claim upon which relief could be granted with respect to the fraudulent transfer claim.

AAA Cooper filed a response to the Motion to Dismiss.  AAA Cooper also sought to amend its Complaint, to bolster its assertion that this court has personal jurisdiction and venue over all of the claims in this case.  AAA Cooper's proposed Amended Complaint added "more factual and legal bases" for personal jurisdiction and venue, and added a claim of "Fraud and Conspiracy to Defraud" against Wes-Pak and VRP.

VRP opposes AAA Cooper's Motion to Amend, arguing that the Amended Complaint does not cure the defects that VRP pointed out in its Motion to Dismiss.  Wes-Pak does not oppose the Motion to Amend.

As discussed in this court's prior Memorandum Opinion and Order (Doc. #37), because VRP's opposition to the Motion to Amend is based on the ground of futility, and makes essentially the same arguments as VRP's prior Motion to Dismiss (Doc. #11), this court will consider the opposition to the Motion to Amend as a renewal of VRP's Motion to Dismiss, now addressed against the Amended Complaint, and will analyze the Amended Complaint against the arguments made in the briefs with respect to both the Motion to Dismiss and Motion to Amend.

In order to rule accurately on the issue of personal jurisdiction, this court conducted an evidentiary hearing on December 21, 2011 to allow for AAA Cooper to provide evidence in support of its burden to prove that this court has personal jurisdiction over VRP.  Following that hearing both VRP and  AAA Cooper filed supplemental briefs in support of their arguments made during the hearing (Doc. #55, #56).

The court has subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1332 (diversity), because there is complete diversity of citizenship, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

For reasons to be discussed, the Motion to Amend is due to be GRANTED, and VRP is due to be DISMISSED as a party for want of personal jurisdiction.

## II.  LEGAL STANDARDS

The dispute over the Motion to Amend in this case effectively raises the issues of a motion to dismiss for lack of personal jurisdiction, for improper venue, and for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(2), (3), (6). Because the issue of personal jurisdiction will be determinative of the matter before the court, the proper legal standard in this case is one for a motion to dismiss for lack of personal jurisdiction. *Cf. Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008) ("When a court 'treats [a] motion as having been brought under Rule 12(b), then it is subject to the rules and practices applicable to the most analogous Rule 12(b) motion.'") (quoting 5C Fed. Prac. & Proc. Civ. § 1360).

In the context of a motion to dismiss for lack of personal jurisdiction in which a hearing has occurred, the plaintiff must prove the existence of personal jurisdiction by a preponderance of the evidence. *Cf. National Enquirer, Inc. v. News Group News, Ltd.*, 670 F. Supp. 962, 964 (S.D. Fla. 1987) (citing *Data Disk, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) ("In this situation, where plaintiff is put to his full proof, plaintiff must establish the jurisdictional facts by a preponderance of the evidence, just as he would have to do at trial.")).

### III.  FACTS

This case arises out of a contractual dispute between AAA Cooper and Wes-Pak.  AAA Cooper is an Alabama corporation with its principal place of business in Dothan, Alabama, and Wes-Pak is an Arkansas corporation, with its principal place of business in Alexander, Arkansas.  Frank E. Westerman ("Westerman") is the President and CEO of Wes-Pak and is a citizen of Arkansas.

From the evidence presented at the hearing, including testimony, depositions, and exhibits, the court finds the following facts:

On June 6, 2008, AAA Cooper, a trucking company, agreed to enter into a Transportation Services Agreement (the "Agreement") with Wes-Pak, a corrugated packing company.  Westerman signed the Agreement on Wes-Pak's behalf as "Pres.-CEO."  The Agreement required AAA Cooper to, *inter alia*, transport cardboard and fiber boxes from Wes-Pak's Shreveport, LA facility to its Louisiana customers, and from its Little Rock, AR facility to its Arkansas customers.  Doc. #1-1 at 13.  The Agreement did not contemplate that AAA Cooper would perform any services in Alabama.

AAA Cooper upheld its end of the bargain and sent a number of invoices for payment to Wes-Pak.  However, as of April 2009, Wes-Pak began to fall behind in payments.  Wes-Pak did not simply refuse to pay.  Wes-Pak, mainly through Westerman, told AAA Cooper on a number of occasions, from early 2009 and continuing through February 2010, that it would be able to pay back the debt.  Ultimately, Wes-Pak never fully satisfied its debt to AAA Cooper or to its other creditors, but instead, made a series of smaller payments to AAA Cooper.

The Plaintiff alleges in its complaint that in February 2010, Westerman told Charlie Prickett ("Prickett"), Executive Vice President and Chief Operation Officer of AAA Cooper, that Wes-Pak was going to sell a building, and, after closing the deal, would pay at least $148,000 to AAA Cooper.  However, the facts from the evidentiary hearing demonstrate that AAA Cooper's Director of Business Development, Mike Wrape ("Wrape"), was aware of Wes-Pak's plan to sell one of its buildings in a lease-back agreement in order to generate cash as early as the summer of 2009.  In an email dated July 9, 2009, Westerman explained that he had three potential buyers for the building in Alexander, Arkansas, and both Westerman's deposition testimony and Prickett's hearing and deposition testimony demonstrate that this sale was intended to be part of a lease-back agreement.  Lease-back agreements are generally used to generate cash which, in this case, Wes-Pak intended to use to pay down some of its outstanding debts including the AAA Cooper debt.

On December 8, 2009, Wes-Pak entered into a lease-back agreement with Birch Brook, Inc.  Birch Brook is a third party company having no relationship with Wes-Pak or AAA Cooper, and Wes-Pak chose to enter into an agreement with Birch Brook because it was the highest bidder for the Alexander building.  The agreement contained a purchase price of $2,800,000 payable in cash from Birch Brook to Wes-Pak on closing, and also contained a fifteen-year lease-back provision in which Wes-Pak would pay yearly rent on the building of $320,000 to Birch Brook.  The rent was to increase by 3% at years six and eleven.  However, the deal with Birch Brook did not come to fruition due to a lapse in the closing date and other bargaining developments. This left Wes-Pak without a buyer for its lease-back plan.

Having no other buyer option for its lease-back plan, Westerman, as Trustee for the Westerman Family Revocable Living Trust; John Steuri, on behalf of the Steuri Family Limited Partnership, LLLP; John Lessell, as Trustee for The Lessell Family Revocable Living Trust; and Lewis A. Mahoney formed VRP,an Arkansas limited liability company, on February 5, 2010, to purchase the Alexander building. No members of VRP are citizens of Alabama. VRP bought the Alexander building under the same terms as the Birch Brook agreement using a bank loan and a loan from Wes-Pak. On that same day, Westerman called Prickett to let him know that he and other board members would be buying the building. Furthermore, he told Prickett that Wes-Pak should begin being able to start paying down some of its outstanding accounts. The exhibits presented by both parties as well as the testimony of Michelle Lewis, AAA Cooper's Director of Administration and Customer Accounts, at the hearing made it clear that Wes-Pak did not pay down its entire balance after the lease-back agreement was finalized.[3] That same evidence, however, demonstrates that following the lease-back agreement Wes-Pak made payments to AAA Cooper in excess of the regular $10,000 payments it usually made. For example, AAA Cooper's check register shows that Wes-Pak paid AAA Cooper $34,031.67 on February 18, 2010; $22,346.47 on February 24, 2010; $35,000 on May 6, 2010; and $30,000 on May 10, 2010. These payments would have gone at least in part towards reducing Wes-Pak's outstanding debt to AAA Cooper just as Westerman said Wes-Pak would do in his February 5, 2010 voicemail to Prickett.

---

[3] VRP's objection to Ms. Lewis's testimony at the hearing, as to which the court reserved ruling, is OVERRULED.

Evidence has been presented that Prickett knew by February 5, 2010 that VRP, and not some third party company, would be the buyer of Wes-Pak's Alexander building. Moreover, Prickett received an e-mail from Westerman on February 12, 2010, containing a commitment letter from an Arkansas bank concerning the $2,380,000 loan that VRP applied for, and which was personally guaranteed by Frank Westerman, Sr., Lewis A. Mahoney, John E. Steuri, and John C. Lessel. Accordingly, the evidence shows that Prickett knew about VRP and Wes-Pak's lease-back agreement by no later than February 2010 and that Prickett did not expess any concerns about this purchase to VRP once he had the details in February.

Furthermore, AAA Cooper has also alleged that Wes-Pak had promised to pay it $148,000 from the profits of the lease-back agreement. The evidence presented, however, is contrary to this claim. The $148,000 number is drawn from a handwritten attachment to an October 22, 2009 email from Westerman to Prickett. On that handwritten attachment there is a series of dates with corresponding dollar figures including one labeled "12-7- 148,457.00." This October 22, 2009 e-mail appears to be part of a discussion between Westerman and Prickett about a possible merger between Wes-Pak and another company intended to yield cash for Wes-Pak. Regardless, the timing of the e-mail makes it clear that it had nothing to do with the lease-back agreement which was not even supposed to close until January, 2010. Nor could the email concern VRP since VRP was not formed until February, 2010. It is clear that the $148,000 amount was in no way connected to the lease-back agreement as alleged by AAA Cooper.

Facts were also presented as to VRP's capitalization, structure, and business. The four members of VRP each contributed $53,000 as starting capital for a total of $212,000 starting capital, and VRP issued each of the four members 15,300 Unit Certificates. VRP's only

business was the ownership of the Alexander building which VRP purchased from Wes-Pak. Furthermore, the trustees and partners of two members of VRP, who were also on the five-member board of directors for Wes-Pak, Frank E. Westerman and John E. Steuri, abstained from Wes-Pak's decision to perform the lease-back agreement with VRP.  Wes-Pak's three disinterested directors unanimously decided to enter into the lease-back agreement with VRP under the same general terms as the Birch Brook lease-back agreement.

After VRP agreed to the lease-back agreement, it took no other part in the facts as alleged by the Plaintiff.  The remaining facts are taken from the allegations found in the Complaint and concern only Wes-Pak, AAA Cooper, and Pratt.

Wes-Pak was never able to pay all of its debt to AAA Cooper.  Accordingly, AAA Cooper's counsel contacted Westerman and demanded payment in April of 2010.  Westerman directed counsel to contact Lessel, legal counsel for Wes-Pak, who told AAA Cooper that, although Wes-Pak was unable to pay the balance due, Wes-Pak was going to be sold to Pratt, and AAA Cooper would be paid if a deal was closed.  Lessel told AAA Cooper that it should not sue prior to the closing date, because if it did, the suit would derail the deal.  However, around November 2010, Lessel told AAA Cooper that Pratt had decided not to pay AAA Cooper at closing.  Several months later, AAA Cooper filed the instant suit.

## IV.  DISCUSSION

VRP raises three arguments in this case: (1) that this court lacks personal jurisdiction over it; (2) that venue in this court is improper; and (3) that AAA Cooper's fraudulent transfer claim should be dismissed.  Because the court finds that it does not have personal jurisdiction over VRP, a discussion of the other two issues is unnecessary.

VRP contends that it should be dismissed from the case because this court lacks personal jurisdiction over it, pointing out that its partners are all non-residents of Alabama, and that it has no office or presence of any kind in Alabama, has never conducted business in Alabama, and committed no acts in Alabama related to AAACooper's claims against it.  AAA Cooper has offered two theories of personal jurisdiction.  First, AAA Cooper argues that this court has personal jurisdiction over VRP because Wes-Pak, in its contract with AAA Cooper, consented to personal jurisdiction in this court, and VRP is bound by this consent as an "alter-ego" or "instrumentality" of Wes-Pak.  Secondly, AAA Cooper argues that VRP has taken part in the furtherance of a conspiracy against AAA Cooper, and therefore this court has jurisdiction under a "conspiracy" theory.

The court will begin with a general discussion of personal jurisdiction before turning to each of AAA Cooper's arguments.

### A. Minimum Contacts

Two types of personal jurisdiction have been recognized by courts: general and specific.  *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).  There has been no allegation made that this court has general jurisdiction over VRP, and rightfully so, since the evidence presented makes it clear that VRP has no presence in the state of Alabama.  *See Id.* at 1292 ("General personal jurisdiction, . . . arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated.").  Therefore, this court will look to whether it has specific personal jurisdiction over VRP.

To determine whether specific personal jurisdiction exists, the court must look at the applicable state long-arm statute and the federal due process requirements.  *Cronin v. Nat'l Ins.*

*Co.*, 980 F.2d 663, 670 (11th Cir. 1993) (citing *Pesoplastic C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1521 (11th Cir. 1985)).  Alabama's long-arm statute permits personal jurisdiction to the extent allowed by the United States Constitution.  Ala. R. Civ. P. 4.2(a)(2); *see Martin v. Robbins*, 628 So. 2d 614, 617 (Ala. 1993).  "When the courts of the forum State have interpreted the forum's long-arm statute to confer jurisdiction to the limits allowed by federal due process, state law need not be applied: [the court] need only ask whether the exercise of jurisdiction over the nonresident defendant comports with due process."  *Vermeulen v. Renault U.S.A ., Inc.*, 975 F.2d 746, 753 (11th Cir.1992).

The Due Process Clause "does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945).  There has been no evidence presented that VRP ever had any contacts with Alabama.  It has no offices in Alabama and does no business in Alabama.  No evidence was presented at the hearing to show that VRP committed any acts in Alabama related to Wes-Pak's dealings with AAA Cooper.  Accordingly, AAA Cooper has failed to prove that VRP has a sufficient amount of contacts with Alabama related to the present claim such that the exercise of jurisdiction over VRP on that basis would comport with due process.

### B. Instrumentality Test

While it is clear that an exercise of specific personal jurisdiction over VRP, itself, would not comport with due process based on any acts committed by it in Alabama, "it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or

corporation is an alter ego . . . of a corporation that would be subject to personal jurisdiction in that court." *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002).

In this case, Wes-Pak signed a contract in which it consented to personal jurisdiction in this court. However, VRP was not a signatory to that contract. To determine whether VRP is bound to that forum selection clause under this theory of the Plaintiff, this court must determine whether VRP is an alter-ego or instrumentality of Wes-Pak.[4]

Alabama law holds that a "separate corporate existence will not be recognized when a corporation is so organized and controlled and its business conducted in such a manner as to make it merely an instrumentality of another . . . ." *Forest Hill Corp. v. Latter & Blum*, 29 So.2d 298, 302 (Ala. 1947). In other words, the determination of alter-ego status is a question of how much control one party has over another. *See* 1 Fletcher Cyc. Corp. § 41.10 ("To determine whether the alter ego theory applies, courts must look at the *level of control* evidenced by the actual, substantial relationship of the parties . . .") (emphasis added). This is a fact-intensive question, and the Alabama Supreme Court has emphasized that it is "impossible to catalogue the infinite variations of fact that can arise but there are certain common circumstances which are important." *Evntl. Waste Control, Inc. v. Browning-Ferris Indus., Inc.*, 711 So.2d 912, 914 (Ala. 1997) (quoting *Duff v. S. Ry.*, 496 So.2d 760, 762-63 (Ala.1986)). These factors include:

---

[4] To determine alter-ego status, this court will apply Alabama law, because neither party has made an argument that some other state's law applies. *See See Bush v. Teachers Ins. & Annuity Ass'n of Am.*, No. 1:05cv378-VPM, 2006 WL 3075539, at *2 n.4 (M.D. Ala. Oct. 30, 2006) (McPherson, Mag. J.) (applying Alabama law when no argument was made to apply foreign law); *Potts v. Dyncorp Int'l, LLC*, No. 3:06cv124-WHA, 2007 WL 899040 (M.D. Ala. Mar. 23, 2007) (Albritton, J.) (applying Alabama law to determine whether out-of-state entity was an alter-ego of an entity subject to personal jurisdiction in Alabama)

(a) The parent corporation owns all or most of the capital stock of the subsidiary.[5]

(b) The parent and the subsidiary corporations have common directors or officers.

(c) The parent corporation finances the subsidiary.

(d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

(e) The subsidiary has grossly inadequate capital.

(f) The parent corporation pays the salaries and other expenses or losses of the subsidiary.

(g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

(h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.

(i) The parent corporation uses the property of the subsidiary as its own.

(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take orders from the parent corporation.

(k) The formal legal requirements of the subsidiary are nor observed.

*Evntl. Waste Control*, 711 So.2d at 915 (quoting *Duff v. S. Ry.*, 496 So.2d 760, 762-63 (Ala.1986)).

Courts will not apply alter-ego or instrumentality theories without sufficient evidence of control. Therefore, the Alabama Supreme Court has found that a mere overlap in management does not, by itself, result in a finding of alter-ego status. *Matrix-Churchill v. Springsteen*, 461 So. 2d 782, 788 (Ala. 1984). Similarly, "the mere loan of money by one corporation to another

---

[5]While VRP is not a subsidiary of Wes-Pak, the court looks to those same factors in regard to AAA Cooper's theory that VRP is the alter-ego of Wes-Pak.

does not automatically make the lender liable for the acts and omissions of the borrower." *Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp.*, 483 F.2d 1098, 1104 (5th Cir. 1973).

Turning to the facts of this case, it is clear that the Plaintiff has failed to meet its burden of proof as to this court's jurisdiction over VRP on this theory. Of the eleven factors recited in *Duff*, the Plaintiff has presented facts relevant to only three. The Plaintiff has demonstrated that two of Wes-Pak's five directors had indirect interests in VRP because of their position as a trustee or partner in one of VRP's founding member's trusts or partnerships. Because of the presence of these interested parties, the Plaintiff has raised the specter of Wes-Pak's control over VRP's decision making process and the lack of independence on the part of VRP's members. However, the inference that there is some sort of control by Wes-Pak or some impermissible interest on the part of Wes-Pak's directors is negated by the fact that the two interested individuals, Frank E. Westerman and John E. Steuri, abstained from Wes-Pak's decision to enter into the lease-back agreement with VRP. Moreover, the lease-back agreement was substantially identical to the one proposed by Birch Brook during an arms-length negotiation process. Accordingly, the evidence is clear that Wes-Pak accepted the same lease-back agreement from VRP that it would have from a third party, and Frank E. Westerman and John E. Steuri's interests in VRP had no effect on the transaction.

The Plaintiff also presented arguments that VRP's only business is with Wes-Pak. However, more accurately stated, VRP's only business is the ownership of the Alexander building which it now leases to Pratt. The fact that VRP's only business is the management of the Alexander building, even when coupled with the loan from Wes-Pak to VRP to allow VRP to

buy the property at Birch Brook's price, is simply not enough to demonstrate the requisite level of control.

VRP also presented evidence which tends to show that it acted independently of Wes-Pak. VRP's four members are the sole owners of VRP. The four members each contributed $53,000 to the initial capitalization of VRP and were each issued 15,300 Unit Certificates by VRP. There has been no evidence presented to demonstrate that VRP is undercapitalized, and there has been no evidence presented to support a finding that Wes-Pak pays any salaries, expenses, or losses for VRP. Nor is there any evidence that Wes-Pak uses VRP's property. Actually, the evidence shows that Wes-Pak was required to pay VRP for the use of the Alexander building. Lastly, VRP provided evidence that it is following the formal legal requirements for maintaining an LLC, and there is no evidence to show that VRP is merely a division or department of Wes-Pak.

To reemphasize Alabama law on this issue, merely having common management between two companies is not enough to sufficiently establish control for personal jurisdiction, *Matrix-Churchill*, 461 So. 2d at 788, nor does a loan from one company necessarily make the parties responsible for the liabilities of each other. *See Krivo Indus. Supply Co.*, 483 F.2d at 1104. Given that AAA Cooper's best evidence for Wes-Pak control over VRP relies on some common management of the two companies and the loan from Wes-Pak to VRP, this court finds that AAA Cooper has not met the burden of proof as to its "alter ego" or "instrumentality" theory of personal jurisdiction over VRP.

### C.  Conspiracy Jurisdiction

AAA Cooper argued in its Response to VRP's Opposition to Motion for Leave to File First Amended Complaint (Doc. #30) that this court had personal jurisdiction over VRP because of VRP's involvement in a conspiracy with Wes-Pak to harm AAA Cooper. In making this argument, AAA Cooper relied exclusively on *Mullins v. TestAmerica, Inc.*, 564 F.3d 386 (5th Cir. 2009). In that case, the court upheld the district court's finding of personal jurisdiction over a party that had no contacts with the forum state, Texas, other than its involvement in a fraudulent transfer scheme which affected "a known, major creditor in Texas whose right to payment arises out of contracts that share a strong connection with Texas." *Id*. at 402. In order to reach this result, the court relied on the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984). *Id*. at 400-04. The Fifth Circuit interprets the "effects" test to allow "an act done outside the state that has consequences or effects within the state [to] suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Id.* at 400 (citing *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999)). In other words, the Fifth Circuit reasoned that involvement in a fraudulent transfer which targeted a specific entity in the forum state over a contract linked to the forum state could create personal jurisdiction over that individual. *Id*. at 402. It is important to note that the Fifth Circuit did not hold that a categorical finding of personal jurisdiction exists given "a non-resident defendant's receipt of assets transferred with an intent to hinder, delay, or defraud a creditor," nor did the court find that the *Calder* "effects" test supplanted the minimum contacts test. *Id*. at 400.

Even if the *Mullins* case were binding on this court, the factual distinctions make it inapplicable to the case at bar. There is simply no evidence before this court which points to a

15

conspiracy between VRP and Wes-Pak to fraudulently transfer the Alexander building specifically to the disadvantage of AAA Cooper and its contract.[6]  Moreover, the sale by Wes-Pak to VRP actually allowed Wes-Pak to make increased payments to AAA Cooper and its several other creditors.  Furthermore, there is no evidence that AAA Cooper was paid less than other creditors or treated differently than any of Wes-Pak's other creditors.  The present case is not factually analogous to *Mullins*.

VRP, citing *Matthews v. Brookstone Stores, Inc.*, 469 F. Supp. 2d 1056 (S.D. Ala. 2007), argues that in order for a "conspiracy theory" of personal jurisdiction to be established in Alabama, there must be some evidence of an overt act by the defendant.  The *Matthews* court explained that "it is well established in Alabama that a plaintiff cannot establish personal jurisdiction under a conspiracy theory unless the plaintiff 'plead[s] with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy.' " *Id.* at 1066 (citing *Ex parte McInnis*, 820 So. 2d 795, 806-07 (Ala. 2001)).  VRP argues that no evidence was presented sufficient to demonstrate an overt act by VRP in furtherance of a conspiracy against Wes-Pak.  VRP argues that AAA Cooper has pointed to only one instance, an allegation found in AAA Cooper's First Amended Complaint, which could be construed as an overt act by VRP.  In the Amended Complaint, AAA Cooper alleges that Westerman, while acting on behalf of VRP and Wes-Pak, contacted AAA Cooper in February 2010 to let them know that Wes-Pak was going to close out on a deal to sell a building so that it could pay AAA Cooper $148,000.  (Doc. #25 at ¶15).  AAA Cooper alleges that it was not made aware of the

---

[6] It is worth noting again that none of the trucking done by AAA Cooper for Wes-Pak took place in Alabama.

fact that VRP, a company owned in part by Westerman and Lessel, was the purchaser of the building.  *Id.*

AAA Cooper's allegation in its Amended Complaint is not supported by the evidence that surfaced during the hearing.  As this court has explained, Westerman kept Wrape and Pickett abreast of the circumstances concerning the sale of the Alexander building.  Most telling was the phone call from Westerman to Prickett in which Westerman explained that he was going to buy the Wes-Pak building to provide increased cash flow to Wes-Pak.  Simply put, AAA Cooper's allegations are not supported by the evidence presented to this court.  Accordingly, this court finds no evidence to support any overt act in Alabama by VRP done in furtherance of any conspiracy against AAA Cooper.

For the foregoing reasons, AAA Cooper has failed to meet its burden of proof as to its "conspiracy" theory of personal jurisdiction.

Because AAA Cooper has failed to establish any theory to support this court's personal jurisdiction over VRP, this court must dismiss VRP as a party to this suit.

## V.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1. The Motion to Amend (Doc. #27) is GRANTED.

2. VRP's Motion to Dismiss (Doc. #11), as now addressed to the Amended Complaint, is GRANTED on the basis of want of personal jurisdiction.

3. Defendant Vimy Ridge Partners, LLC is DISMISSED as a party defendant for want of personal jurisdiction.

4. The Motion to Strike Affidavit of William D. Prickett, III (Doc. #21) is GRANTED, Mr. Prickett having testified at the hearing.

5. The Motion to Quash of Pratt Industries (Doc. #32) is DENIED AS MOOT.

6. The case will proceed against Wes-Pak, Inc.

Done this 13th day of March, 2012.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE